| |
|---|
| **Crump v City of New York** |
| 2024 NY Slip Op 34255(U) |
| November 30, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 155802/2013 |
| Judge: J. Machelle Sweeting |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:　　**HON. J. MACHELLE SWEETING**　　　**PART 62**

*Justice*

-------------------------------------------------------------------------------X

CONRAD L. CRUMP,

　　　　　　　　　　　　　Plaintiff,

　　　　　　- v -

CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, RAYMOND KELLY, Commissioner of the
NYC Police Department, DEPUTY INSPECTOR WILLIAM
MCSORLEY, SERGEANT JAMES LEO, LIEUTENANT
ROBERT GIBBONS, CAPTAIN JONATHAN LEVINE, and
CAPTAIN JAY MCMAHON, all being sued in their individual
and professional capacities,

　　　　　　　　　　　　　Defendants.

-------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 155802/2013 |
| **MOTION DATE** | 6/5/2023 |
| **MOTION SEQ. NO.** | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 52, 55, 57, 62

were read on this motion to/for　　　　　　　JUDGMENT - SUMMARY　　　　　.

Plaintiff Conrad L. Crump brings this action against defendants the City of New York ("the City"), the New York City Police Department (the "NYPD"), Raymond Kelly, Commissioner of the NYC Police Department ("Kelly"), Deputy Inspector William McSorley ("McSorley"), Sergeant James Leo ("Leo"), Lieutenant Robert Gibbons ("Gibbons"), Captain Jonathan Levine ("Levine") and Captain Jay McMahon ("McMahon") (collectively, "defendants") for alleged employment discrimination based on race, color, and national origin, a hostile work environment, and retaliation in violation of the New York State Human Rights Law ("NYSHRL") (Executive Law § 296 *et seq.*) and the New York City Human Rights Law ("NYCHRL") (Administrative Code of the City of New York § 8-107 *et seq.*). Defendants move, pursuant to CPLR 3212, for summary judgment dismissing the complaint.

[* 1]

## Factual Background

Plaintiff was born in Antigua and self-identifies as a Black male of West Indian descent New York State Courts Electronic Filing ["NYSCEF"] Doc No. 26, Rosenfeld affirmation, exhibit A, ¶ 17; NYSCEF Doc No. 39, Cronin affirmation, exhibit 1, plaintiff tr at 45). Plaintiff held the rank of police officer in the NYPD from June 30, 1995 until March 21, 1999, when he was promoted to the rank of detective, third grade (NYSCEF Doc No. 26, ¶¶ 18-19). Prior to his promotion, plaintiff had worked as an undercover officer in the Narcotics Division (NYSCEF Doc No. 39 at 45), and he continued to work undercover in that division until 2003, when he became an investigator (*id.* at 20). Plaintiff worked in the detective squad at the 32nd Precinct from 2005 until August 2014, when he became a detective specialist at the 7th Precinct (NYSCEF Doc No. 26, ¶ 8; NYSCEF Doc No. 39 at 23-24; NYSCEF Doc No. 30, Rosenfeld affirmation, exhibit E at 27). As a detective specialist, plaintiff worked in uniformed patrol (NYSCEF Doc No. 39 at 29). Plaintiff has since retired from the NYPD (NYSCEF Doc No. 38, plaintiff mem of law at 8; NYSCEF Doc No. 43, Cronin affirmation, exhibit 5, Deputy Inspector Conor K. Wynne [Wynne] tr at 28).

Kelly was the commissioner of the NYPD when the alleged acts occurred (NYSCEF Doc No. 13, amended answer, ¶ 11). McSorley and Gibbons had been employed by the NYPD as a deputy inspector and a lieutenant, respectively (*id.*, ¶¶ 12 and 14). Leo is a current NYPD employee and holds the rank of sergeant (*id.*, ¶ 13). Levine and McMahon are current NYPD employees, and each holds the rank of captain (*id.*, ¶¶ 15-16). McSorley, Gibbons, Leo, Levine and McMahon, who are white, supervised plaintiff (NYSCEF Doc No. 26, ¶¶ 12-16).

155802/2013   CRUMP, CONRAD L. vs. CITY OF NEW YORK
Motion No. 001

Page 2 of 32

2 of 32

[* 2]

The detective squad at the 32nd Precinct is comprised of the A, B and D teams, the domestic violence team, and the "BRAM" team (NYSCEF Doc No. 40, Cronin affirmation, exhibit 2, 11/17/2014 hearing tr at 9). "BRAM" stood for Burglary Robbery Apprehension Module (*id.*). Plaintiff testified that unlike the regular squad, where detectives "catch … [s]erious, serious cases," the BRAM unit investigated burglaries and small crimes (NYSCEF Doc No. 39 at 67). Detectives begin learning investigative skills in the BRAM unit (*id.*).

Plaintiff testified that beginning in 2010 until 2013, "when we had Lieutenant Gibbons" as the commander of the detective squad, he was subjected to discrimination based on race, color and national origin, a hostile work environment and retaliation (*id*. at 45 and 68). Plaintiff believed that he was targeted because he once told Gibbons, "'I don't think the people within the 32nd Precinct, or within the community, is [sic] getting a [sic] fair treatment on investigation [sic] that goes on here'" (*id.* at 58). Plaintiff testified that he "speak[s]" his mind and "speak[s] for the community" which is "[pre]dominantly [B]lack in the 32" (*id.* at 77-78). The complaint cites several instances where plaintiff was treated unfairly when compared to his white counterparts.

### A.    Leave Requests

The complaint alleges that defendants repeatedly denied plaintiff's requests for time off but granted requests for time off from white detectives (NYSCEF Doc No. 26, ¶¶ 45-46). Plaintiff confirmed at his deposition that his requests were often denied (NYSCEF Doc No. 39 at 46). Plaintiff claimed he was told, "'Oh, you have too many open cases; you can't get the day,'" but white detectives' requests were routinely granted, even though "we're [all] getting caseloads" (*id.*).

155802/2013   CRUMP, CONRAD L. vs. CITY OF NEW YORK
Motion No. 001

Page 3 of 32

[* 3]

B.  Overtime Pay

The complaint alleges that defendants repeatedly denied plaintiff's requests for investigative overtime, whereas white detectives with less seniority were granted overtime, and when plaintiff did work overtime, he was not paid (NYSCEF Doc No. 26, ¶¶ 35 and 38).  The complaint further alleges that defendants denied plaintiff the opportunity to seek overtime because he was removed from working "paid detail" and that white detectives in his unit were allowed to "catch cases," but he was not (*id.*, ¶¶ 36 and 41-42).  Plaintiff testified that "[i]f I make an arrest, and I put in for overtime, I get paid, and then they reverse the payment back" (NYSCEF Doc No. 39 at 46).  Gibbons once told plaintiff that "he would like to take my legs from under me.  Not physically remove my legs, but take my overtime – because I do paid detail" (*id.* at 60).  Plaintiff stated that "there is no written rule that says you cannot get overtime, or you cannot get a day off, which was done to me" (*id.* at 97).  His white counterparts, like Detective Gerard Blake ("Blake"), would receive overtime even though they had a high number of open cases (*id.* at 49 and 98).  Plaintiff stated that white detectives "get away with it.  They put their slips in; it's not reversed like mine" (*id.* at 98).

C. Promotion and Transfer Opportunities

The complaint alleges that, despite his "glowing evaluations" and seniority, defendants repeatedly passed plaintiff over for promotion to detective, second grade, in favor of white officers (NYSCEF Doc No. 26, ¶¶ 21-27). The complaint alleges that, in order "to justify promoting white officers with less seniority and less ability," defendants "deliberately deflated" plaintiff's evaluations and subjected him to interim evaluations and threatened to issue (and did issue) command disciplines to plaintiff for poor case management (*id.*, ¶¶ 30-34).  Plaintiff was demoted

155802/2013  CRUMP, CONRAD L. vs. CITY OF NEW YORK
Motion No.  001

Page 4 of 32

4 of 32

to the BRAM unit while none of the white detectives in his unit had ever been demoted (*id.*, ¶¶ 28-29). Defendants also denied plaintiff's requests to transfer to the Intel Division and the Internal Affairs Bureau (IAB) (*id.*, ¶¶ 43-44).

Plaintiff testified that Gibbons informed him in August 2011 that he had been "demoted" to the BRAM unit (NYSCEF Doc No. 39 at 67-68). Although his title and salary remained the same, plaintiff believed "it's like going backwards" because the BRAM unit dealt with less serious cases (*id.* at 68-69).

In February 2011, plaintiff interviewed with the Intel Division, but Gibbons refused to sign a recommendation approving the transfer (*id.* at 87). Plaintiff testified that he learned for the first time during that interview that he had received "2.5" on an interim evaluation (*id.* at 76). After plaintiff delivered copies of all his evaluations to the Intel Division, he never heard from that division again (*id.* at 76-77). In March 2013, plaintiff completed an applicant questionnaire for IAB (NYSCEF Doc No. 44, Cronin affirmation, exhibit 6 at 2). Plaintiff testified that IAB did not accept him based on his evaluations (NYSCEF Doc No. 39 at 77).

Plaintiff testified that when he asked Gibbons to explain the factors considered to obtain a promotion, Gibbons replied, "'[i]t depends on your case load, your appearance, your sick time, and how you work with people within the community. And your evaluations" (*id.* at 46). Plaintiff testified that he and 11 Black detectives at the 32nd Precinct had been bypassed for promotion to detective, second grade, in favor of four white detectives (*id*. at 91-92). Plaintiff believed the Black detectives were all qualified (*id.* at 93). When asked whether the four white detectives were not qualified, plaintiff answered, "I can't speak on their behalf; I can speak for myself and the other colleagues that were passed over" (*id.*). Unlike the Black detectives, some of whom had worked undercover in the Narcotics Division, the four white detectives were all precinct officers

155802/2013 CRUMP, CONRAD L. vs. CITY OF NEW YORK
Motion No. 001

Page 5 of 32

[* 5]

who had never worked undercover (*id.* at 94-95). Plaintiff believed that working as an undercover entailed taking risks, which made that candidate more qualified (*id.* at 97), whereas "a lot of white counterparts, they don't take risks" (*id.* at 94). Plaintiff acknowledged it was not a written rule that taking risks as an undercover made for a better applicant and that no one had ever told him that prior experience as an undercover made for a better applicant (*id.* at 97- 98).

D.      Plaintiff's Evaluations

Annual evaluations reviewed an employee's performance in numerous categories like investigative skills, arrests and community interaction (*id*. at 22). A "rater" assesses and grades the employee on a zero to five scale, with five being the highest score (NYSCEF Doc No. 30, Rosenfeld affirmation, exhibit E; NYSCEF Doc No. 43 at 33-34). A "reviewer" may add additional comments (NYSCEF Doc No. 30). Plaintiff received a "4" overall on each of his evaluations between 2004 and 2009 (NYSCEF Doc No. 31, Rosenfeld affirmation, exhibit F). In addition to annual evaluations, a supervisor may complete an interim evaluation, which plaintiff viewed negatively because it could result in an employee's placement on "performance monitoring" if the overall rating fell below a "2.5" (NYSCEF Doc No. 39 at 74).

Gibbons completed plaintiff's annual evaluation for the 2010-2011 period (NYSCEF Doc No. 30 at 17). Plaintiff received a "2" in case management, a "3" in several other categories and a "3.5" overall (*id.* at 17). Gibbons noted that plaintiff's arrest activity had dropped significantly compared to his prior arrest activity and had fallen "well below the detective squad average" (*id.* at 18). Gibbons also detailed plaintiff's difficulties managing cases, writing that plaintiff "takes detailed notes, and records his notes on paper/pad/back of 61, then lags with regard to actually

155802/2013   CRUMP, CONRAD L. vs. CITY OF NEW YORK
Motion No.  001

Page 6 of 32

6 of 32

[* 6]

typing and documenting the … information on the DD5 for the ECMS case folder" (*id.*). Leo, the designated reviewer, concurred (*id.*).

Gibbons completed an interim evaluation covering July 12, 2011 through October 19, 2011 (*id.* at 14). Plaintiff received a "3" or less in every category but two, including a "0" in report writing and a "1" in both case enhancement and organization (*id.*). His arrest activity increased, but "[t]he issue with his arrests is the required paperwork, and the timeliness of a closing – he just doesn't adhere to the proper procedures" (*id.* at 15). Other comments included an "inability to enhance an investigation" by following up with complaints and taking other investigative steps, even though he was "closely supervised and instructed"; poor organizational skills; a lack of preparedness to discuss and explain cases; "nonexistent" case management, which did "not conform to any of the bureau guidelines and specifications"; and a need for supervision and instruction, which often was not followed (*id.*). Gibbons wrote:

> "[plaintiff] was assigned to the BRAM in August 2011, to give him a better sense of systematic, step by step investigatory work. Since his assignment, his overall ability, interest level, case work has diminished greatly. He is resistant to supervisory instruction in the majority of squad related issues (IE: case work, documentation, victim/witness interviews, days off, court related procedures and so forth.) [Plaintiff's] answer to his case work is, 'I do my work, I just don't document it'. This interim evaluation is being completed because [plaintiff's] performance is unacceptable in the detective squad. The liabilities in his cases bring his integrity into question" (*id*. at 15).

Many of plaintiff's cases had also been reassigned to other detectives "in order to maintain the integrity of said case – the victim cannot suffer because he will not conduct a proper investigation" (*id.*). Gibbons observed that plaintiff "displays a complete resistance to many of the changes that have taken place not only with the detective bureau, but with the daily operations of the detective squad" (*id.*). He recommended plaintiff's reassignment "to a position … where he maintains no investigative responsibility" (*id*. at 15). Levine, the reviewer, agreed. Levine

[* 7]

added that he had spoken to plaintiff about his case management and lack of organization and recommended reassigning plaintiff to a position requiring less documentation of his work (*id*.).

In an interim evaluation covering May 16, 2012 to November 7, 2012, Sergeant Matteo Brattesani ("Brattesani") awarded plaintiff a "2.5" overall (*id*. at 19). The evaluation largely repeated the concerns discussed in the previous interim evaluation. Brattesani wrote that "[plaintiff] has been assigned to the Detective Squad for approximately 7 years and though he has shown little improvement, he doesn't always document basic investigative steps in his assigned cases"; plaintiff's cases had been "reviewed and continue to show an inability to enhance an investigation" and failed to follow up with complainants; plaintiff has improved little with respect to documenting his cases in the ECMS system; and plaintiff demonstrates "little organizational skills which is evident in his poor case management" (*id*. at 20). Brattesani concluded that plaintiff was more suited for an assignment with less investigative responsibility (*id*.). McMahon, the reviewer, concurred, and wrote separately of plaintiff's failure to document his cases in the ECMS system as instructed (*id*. at 21).

Brattesani gave plaintiff a "4" overall in an annual evaluation for the 2011-2012 period (*id*. at 22). Brattesani noted that plaintiff had "shown great strides in case management" (*id*. at 23). Gibbons, the reviewer, concurred with Brattesani's assessment (*id*.).

For the 2012-2013 period, Leo gave plaintiff a "2.5" overall, with a "1" in case management, report writing, professional responsibility, commitment, adaptability and organization (*id*. at 24). The evaluation repeated earlier concerns about plaintiff's inability to properly manage cases and his failure to update cases and write reports in the ECMS system (*id*. at 25). Plaintiff also received two command disciplines and was removed from the "catching order" due to his failure to properly document his investigative steps (*id*.). The lack of professional

155802/2013  CRUMP, CONRAD L. vs. CITY OF NEW YORK
Motion No. 001

Page 8 of 32

8 of 32

responsibility, initiative, commitment, drive, and organization, and a failure to enhance investigations were "proven to be a liability in [plaintiff's] effectiveness to conduct investigations," and led Leo to conclude that plaintiff should be "reassigned to a non-investigative assignment with minimal responsibility" (*id.*). McMahon, the reviewer, agreed, and commented that plaintiff had been counseled repeatedly on documenting his work (*id.* at 26). McMahon added that plaintiff's poor performance had impacted the other detectives in the squad, who were "forced … to take on heavier caseloads" (*id.*).

### E.     Other Incidents of Alleged Discrimination

Plaintiff testified that between 2010 and 2013, Detectives Blake, Jimmy Quilty ("Quilty"), Danny Hull ("Hull") and Chris Kiln ("Kiln"), who were white, would "[s]ometimes … make fun of my accent. Sometimes they like come with this, 'God saved the queen'" (NYSCEF Doc No. 39 at 99-100 and 102). Plaintiff stated that "[t]hey do it as in a joking manner, but you know, how many times is it going to be a joke when you keep repeating the same thing over and over" (*id.* at 100). Regarding Quilty, plaintiff testified that "[t]his is something that goes on. I can't specifically say like, he did it yesterday, or if he did it in 2011, but it's just an ongoing thing …. You know, sometimes your accent, or, you know, '[o]h, so what do you guys hunt over there? Do you guys use guns, or do you guys use spears'" (*id.*). In addition, Kiln once told plaintiff, "[l]isten, you know what? You know, you need to control your Jamaican boy from committing so much crime here'" even though plaintiff is not Jamaican (*id.* at 101). Plaintiff could not state how often they joked about his accent, testifying that "I guess it depends on their moods, or whatever the day may be" (*id.* at 101-102).

155802/2013   CRUMP, CONRAD L. vs. CITY OF NEW YORK
Motion No.  001

Page 9 of 32

[* 9]

Plaintiff testified that Gibbons once called to berate him for leaving work without closing 10 cases as he had been instructed (*id*. at 111). Plaintiff, who was traveling in a vehicle with his wife at the time, told Gibbons that he should not speak to him in that manner (*id.* at 112). Plaintiff was not disciplined for this incident (*id.*).

Plaintiff testified that Detective Aman Conners ("Conners"), who is white, received favorable treatment because when Conners failed to report for work, Gibbons would direct a detective to "[p]ut in a 28 for Conners"[1] (*id*. at 47-48). But, when plaintiff took "legitimate vacation," he was suspended (*id*. at 48). Plaintiff also testified that Blake, who carried a heavy caseload, would submit overtime slips and be paid (*id*. at 49). Plaintiff acknowledged that there was no written rule that time off or overtime requests would be denied because that detective had a certain number of open cases (*id*. at 52).

### F. Plaintiff's Complaints

Plaintiff testified that on some unknown date, he spoke to Sergeant Sotto in the NYPD's OEEO office (NYSCEF Doc No. 39 at 105). Plaintiff testified as follows:

> "I told him that I don't think I was being treated fairly in the 32 squad; I said that I spoke to them about getting promoted. And then I said, 'They're giving me a hard time with me getting days office, and they're giving me a hard time about me wanting to take off. And they're complaining about my caseload and my case management. I work overtime hours. I put my slip in, and then they reverse it, and take money back out of my check" (*id.* at 105-106).

Plaintiff also mentioned his evaluations (*id.* at 108-109). Sergeant Sotto responded, "'[t]his is not an OEEO problem; this sounds more like a union issue,'" and took no further action (*id*. at 106).

Plaintiff testified that he tried reaching out to his superiors, as well (*id*. at 109). He told Levine, "'Cap, you know, there's a problem in the 32. I'm having a problem with the lieutenant;

---

[1] "Aman Conners" is also spelled "Eamonn Conners" (NYSCEF Doc No. 48, Cronin affirmation, exhibit 10 at 13). A UF-28 is a request for leave form that must be approved by a supervisor (NYSCEF Doc No. 40 at 15).

**155802/2013   CRUMP, CONRAD L. vs. CITY OF NEW YORK**                    **Page 10 of 32**
  **Motion No.  001**

10 of 32

I'm having a problem with the squad'" (*id.*). Levine later signed one of the interim evaluations (*id.* at 110). Plaintiff contacted the chief of the Detective Bureau, Chief Phil T. Pulaski (Pulaski) (*id.* at 113; NYSCEF Doc No. 32, Rosenfeld affirmation, exhibit G at 3). Pulaski scheduled two meetings with plaintiff, but they never took place (NYSCEF Doc No. 39 at 114-115). Plaintiff also "notified Internal Affairs and got log numbers" and "put a few log numbers on Sergeant Leo" (NYSCEF Doc No. 41, Cronin affirmation, exhibit 3, 7/13/2015 hearing tr at 17-18). Plaintiff "never called or followed up" with IAB (*id.* at 18).

### G. Plaintiff's Suspension and Disciplinary Charges

On June 25, 2013, Assistant Chief Robert K. Boyce ("Boyce"), Commanding Officer, Detective Borough Manhattan, requested a disciplinary charge and specification for plaintiff, who had been issued supervisors complaint Nos. 13/2013 and 51/2013, for failing to timely document his investigative steps (NYSCEF Doc No. 32 at 3). Boyce made this request because plaintiff had declined to accept any discipline without a statutory hearing (*id.*). Pulaski endorsed the charge and specification on October 29, 2013 (*id.* at 1-2).

On August 5, 2013, McMahon suspended plaintiff for being absent without leave ("AWOL") and for failing to report for duty from July 30 to August 2, 2013, despite two supervisors ordering him to report (NYSCEF Doc No. 33, Rosenfeld affirmation, exhibit H). The four charges and specifications dated August 6, 2013 allege that plaintiff failed to appear for scheduled duty from July 30 to August 2, 2013; failed to comply with an order from Sergeant Michael Seiling ("Seiling") to report for duty on August 1, 2013; failed to comply with an order from McMahon to report for duty on August 2, 2013; and "engaged in conduct prejudicial to the good order, efficiency or discipline of the Department" by submitting a UF-28 that stated the week

155802/2013   CRUMP, CONRAD L. vs. CITY OF NEW YORK
Motion No.  001

Page 11 of 32

[* 11]

of July 30 was his annual scheduled vacation pick when it was not (NYSCEF Doc No. 32 at 4-5). Boyce endorsed the charges and specifications on August 9, 2013 (*id.* at 5).

A hearing took place before David S. Weisel ("Weisel"), Assistant Deputy Commissioner – Trials, on November 17, 2014 and July 13, 2015 (NYSCEF Doc No. 28, Rosenfeld affirmation, exhibit C at 1). Plaintiff was represented by counsel (*id.* at 2). Plaintiff, Leo, Seiling, and McMahon all testified (NYSCEF Doc No. 41 at 2; NYSCEF Doc No. 40 at 7, 58 and 74). In a 14-page memorandum, Weisel concluded that plaintiff was guilty on all charges and specifications (NYSCEF Doc No. 28 at 1). Weisel noted that plaintiff admitted to failing to timely document his investigative steps in the ECMS system, that his supervisors had spoken to him about timely documenting his work, and that he had received two command disciplines for failing to do so (*id.* at 5). Weisel concluded that plaintiff failed to appear for four scheduled tours of duty between July 30 and August 2, 2013, despite Leo having told plaintiff on July 20 that his UF-28 for leave that week had been denied (*id*. at 7-8). Plaintiff admitted at trial that he did not follow Seiling's order to report to work on August 1 or McMahon's order to report to work on August 2 (*id*. at 10). Weisel also noted that plaintiff was aware that members had to seek their commanding officer's approval to change an annual vacation pick, and that plaintiff had submitted a UF-28 for the week of July 30 indicating that it was his annual vacation pick without first speaking to his commanding officer (*id*. at 11). Weisel recommended that plaintiff be dismissed from the NYPD, with the dismissal held in abeyance for one year, and that plaintiff forfeit the 30 days he had served on suspension (*id*. at 13). The NYPD commissioner at the time approved the recommended penalties (NYSCEF Doc No. 34, Rosenfeld affirmation, exhibit I).

155802/2013  CRUMP, CONRAD L. vs. CITY OF NEW YORK
Motion No. 001

Page 12 of 32

12 of 32

H.    This Action

Plaintiff commenced this action by filing a summons and complaint on June 25, 2013[2] (NYSCEF Doc No. 1). The complaint pleads causes of action for race, color and national origin discrimination, a hostile work environment, and retaliation under the NYSHRL (first through fifth) and NYCHRL (sixth through tenth). Plaintiff seeks compensatory and punitive damages, statutory remedies, both legal and equitable, plus costs and interest (NYSCEF Doc No. 26 at 21).

Defendants now move for summary judgment dismissing the complaint.

**The Parties' Contentions**

Defendants posit that the claims for race, color and national origin discrimination fail because plaintiff's unsatisfactory work performance constitutes a legitimate, nondiscriminatory reason for their actions, and that plaintiff cannot demonstrate that their proffered reason was a pretext for discrimination or that they were motivated by an invidious discriminatory intent. Defendants contend that the hostile work environment claims fail because the alleged incidents amount to nothing more than petty slights and trivial inconveniences or isolated, sporadic incidents. Defendants also maintain that the retaliation claims must be dismissed because plaintiff never specifically complained about discrimination, and did not, therefore, engage in protected activity. Even if plaintiff had engaged in a protected activity, defendants argue that the allegedly poor treatment continued even after plaintiff filed an OEEO complaint, and that the filing of the summons and complaint in this action on the same day the first request for a charge and specification was made shows only that it was a continuation of defendants' course of conduct.

---

[2] Plaintiff claims to have commenced this action on June 26, 2013 (NYSCEF Doc No. 38 at 26).

**155802/2013   CRUMP, CONRAD L. vs. CITY OF NEW YORK**                              **Page 13 of 32**
  **Motion No.  001**

Plaintiff counters that he can establish each element of his *prima facie* case for discrimination because defendants' selective enforcement of discipline constitutes an adverse employment action that occurred under circumstances giving rise to an inference of discrimination and establishes that he was treated differently than his white counterparts. On the hostile work environment claims plaintiff, citing *Floyd v City of New York* (959 F Supp 2d 540 [SD NY 2013]), counters that the nexus between "proven systemic racism in how the NYPD treated the [B]lack and Hispanic community at the pertinent time" and his complaints is sufficient to sustain the hostile work environment claims, and "urges the court not to burden plaintiff with proof that such racism existed in the 32nd precinct" (NYSCEF Doc No. 38 at 11-12). As to the retaliation claims, plaintiff alleges that after he spoke up for the community, he was subjected to excessive scrutiny, performance monitoring, and interim evaluations. The most egregious acts, however, took place after he filed complaints with the OEEO office and IAB and after he filed the present lawsuit, when defendants drafted the five charges and specifications against him.[3]

---

[3] Plaintiff never amended his complaint to plead any allegations about these disciplinary actions (*see Caputo v IESI NY Corp.*, 228 AD3d 480, 482 [1st Dept 2024] ["Because plaintiff never amended his complaint to allege that defendants' counterclaims and third-party claims constituted retaliation for his complaint in this action, he may not raise those allegations in opposition to summary judgment"]). Nevertheless, defendants addressed the charges and specifications and the disposition made after trial on their motion.

**155802/2013   CRUMP, CONRAD L. vs. CITY OF NEW YORK**
**Motion No.  001**

**Page 14 of 32**

14 of 32

## Discussion

It is well settled that a party moving for summary judgment "must make a *prima facie* showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). The "facts must be viewed in the light most favorable to the non-moving party" (*Vega v Restani Constr. Corp.*, 18 NY3d 499, 503 [2012] [internal quotation marks and citation omitted]). If the moving party has met this *prima facie* burden, the non-moving party must furnish evidence in admissible form sufficient to raise a material issue of fact (*Alvarez*, 68 NY2d at 324).

As a preliminary matter, plaintiff's NYSHRL claims accrued before the enactment of Executive Law § 300 (*see* L 2019, ch 160, § 6). Thus, this court reviews the NYSHRL claims under the pre-amendment standard (*see Kwong v City of New York*, 204 AD3d 442, 444 n 1 [1st Dept 2022], *lv dismissed* 38 NY3d 1174 [2022]; *Golston-Green v City of New York*, 184 AD3d 24, 41 n 3 [2d Dept 2020]).

A.   Race, Color and National Origin Discrimination

The first, second, third, sixth, seventh and eighth causes action plead claims for race, color and national origin discrimination under the NYSHRL or the NYCHRL. The NYSHRL and the NYCHRL proscribe employment discrimination based on race, color or national origin (Executive Law § 296 [1] [a]; Administrative Code § 8-107 [1] [a] [3]). NYSHRL claims are analyzed under the burden shifting framework articulated in *McDonnell Douglas Corp. v Green* (411 US 792 [1973]) (*Melman v Montefiore Med. Ctr.*, 98 AD3d 107, 112 [1st Dept 2012]). Under the *McDonnell Douglas* approach, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by demonstrating that the plaintiff is a member of a protected class, was

155802/2013   CRUMP, CONRAD L. vs. CITY OF NEW YORK
Motion No. 001

Page 15 of 32

qualified for the position, and suffered an adverse employment under circumstances that give rise to an inference of discrimination (*Hamburg v New York Univ. Sch. of Medicine*, 155 AD3d 66, 73-74 [1st Dept 2017]). If the plaintiff meets this minimal burden, the defendant must "come forward with evidence of 'legitimate, independent, and nondiscriminatory reasons to support its employment decision'" (*id.* [citation omitted]). If the defendant carries its burden, then the plaintiff must show that the proffered explanation is "a false pretext masking discriminatory intent" (*id.* at 76; *see also DeFreitas v Bronx Lebanon Hosp. Ctr.*, 168 AD3d 541, 541 [1st Dept 2019] [the stated reason must be "false or unworthy of belief and that more likely than not [that discrimination] was the real reason"]). Thus, a defendant moving for summary judgment on an NYSHRL claim "'must demonstrate either plaintiff's failure to establish every element of intentional discrimination, or, having offered legitimate, nondiscriminatory reasons for [its] challenged actions, the absence of a material issue of fact as to whether [its] explanations were pretextual'" (*Shapiro v State of New York*, 217 AD3d 700, 701 [2d Dept 2023] [citation omitted]).

NYCHRL claims are evaluated under both the *McDonnell Douglas* and mixed-motive frameworks (*Melman*, 98 AD3d at 113). "Under the 'mixed-motive' framework, 'the question on summary judgment is whether there exist triable issues of fact that discrimination was one of the motivating factors for the defendant's conduct'" (*Hudson v Merrill Lynch & Co., Inc.*, 138 AD3d 511, 514 [1st Dept 2016], *lv denied* 28 NY3d 902 [2016], *quoting Williams v New York City Hous. Auth.*, 61 AD3d 62, 78 n 27 [1st Dept 2009]). Thus, a defendant moving for summary judgment on an NYCHRL claim must demonstrate that "no jury could find defendant liable under any of the evidentiary routes: under the *McDonnell Douglas* test, or as one of a number of mixed motives, by direct or circumstantial evidence" (*Bennett v Health Mgt. Sys., Inc.*, 92 AD3d 29, 41 [1st Dept 2011], *lv denied* 18 NY3d 811 [2012]). To defeat the motion, the plaintiff must furnish evidence

155802/2013  CRUMP, CONRAD L. vs. CITY OF NEW YORK
Motion No.  001

Page 16 of 32

showing that the defendant's reason was false or that the defendant was motivated, at least in part, by discrimination (*Hamburg*, 155 AD3d at 73; *see also Bond v New York Health & Hosps. Corp.*, 215 AD3d 469, 470 [1st Dept 2023] [the evidence must show that the plaintiff was treated less well than other employees because of a protected characteristic]; *Bennett*, 92 AD3d at 45 [the plaintiff must offer "some evidence that at least one of the reasons proffered by defendant is false, misleading, or incomplete"]). "A plaintiff's 'feelings and perceptions of being discriminated against are not evidence of discrimination'" (*Basso v Earthlink, Inc.*, 157 AD3d 428, 430 [1st Dept 2018] [citation omitted]).

Applying these principles here, defendants have demonstrated that there is no evidentiary route under which plaintiff can prevail on any of his discrimination claims (*see McIntosh v Department of Educ. of the City of N.Y.*, 202 AD3d 481, 482 [1st Dept 2022]). To begin, defendants have established that plaintiff's transfer to the BRAM unit does not constitute an adverse action under the NYSHRL. "An adverse employment action requires a materially adverse change in the terms and conditions of employment" (*Messinger v Girl Scouts of U.S.A.*, 16 AD3d 314, 314-315 [1st Dept 2005]). Plaintiff retained his title and salary and his duties remained the same in this lateral transfer (*see Ragoo v New York City Taxi & Limousine Commn.*, 132 AD3d 562, 562 [1st Dept 2015]; *Silvis v City of New York*, 95 AD3d 665, 665 [1st Dept 2012], *lv denied* 20 NY3d 861 [2013]). Thus, "[p]laintiff's perception that the transfer was a demotion fails to raise an issue of fact" (*Cubelo v City of New York*, 168 AD3d 637, 638 [1st Dept 2019]).

Defendants have also shown that plaintiff's subjective belief that he was more qualified than his white counterparts for a promotion does not raise an inference of discrimination (*see Chin v New York City Hous. Auth.*, 2011 NY Slip Op 31900[U], *18-19 [Sup Ct, NY County 2011], *affd* 106 AD3d 443 [1st Dept 2013], *lv denied* 22 NY3d 861 [2014] [granting summary judgment

155802/2013  CRUMP, CONRAD L. vs. CITY OF NEW YORK
Motion No. 001

Page 17 of 32

17 of 32

where the plaintiff was unaware of the education or qualifications of the person who received a promotion]; *Richetts v Ashcroft*, 2003 WL 1212618, *7, 2003 US Dist LEXIS 3878, *24 [SD NY, Mar. 7, 2003, No. 00 Civ. 1557 (JGK)] ["the plaintiff's conclusory allegations of discrimination and her own subjective evaluations that she was better qualified than her coworkers are insufficient to demonstrate discrimination"]). Plaintiff testified that he could not "speak" to whether the white detectives were qualified (NYSCEF Doc No. 39 at 93). The only qualification plaintiff could discern that the four white detectives did not possess was prior experience working undercover. However, plaintiff admitted that it was not a written rule nor was he ever told that prior experience as an undercover made for a better applicant (*id*. at 97). Plaintiff's answers to defendants' interrogatories, which are not sworn (CPLR 3133 [b]), establishes only that white detectives with less seniority were promoted (NYSCEF Doc No. 48, Cronin affirmation, exhibit 10, ¶¶ 9-12). At his deposition, though, plaintiff did not identify seniority as a dispositive factor when deciding whether an applicant was qualified for a promotion.

In contrast to the NYSHRL, the NYCHRL does not require proof of a material adverse change to a plaintiff's employment. Instead, the action need only have disadvantaged the plaintiff (*Harrington v City of New York*, 157 AD3d 582, 585 [1st Dept 2018]). Even assuming the lateral transfer to the BRAM unit disadvantaged him, plaintiff's unsatisfactory work performance constitutes a legitimate, nondiscriminatory reason for his reassignment to that unit, for the denial of his requests for leave, overtime, and transfers, and for a lack of promotion (*see Johnson v IAC/InterActiveCorp*., 179 AD3d 551, 552-553 [1st Dept 2020], *lv denied* 35 NY3d 912 [2020] [dissatisfaction with the plaintiff's work performance and her failure to improve were valid reasons for her termination]; *Hudson*, 138 AD3d at 515-516 [poor work performance a legitimate, nondiscriminatory reason]). Plaintiff earned positive ratings on each evaluation he received before

155802/2013  CRUMP, CONRAD L. vs. CITY OF NEW YORK
Motion No. 001

Page 18 of 32

the alleged discrimination began in 2010. Those evaluations, though, detailed specific deficiencies with his work, notably in the areas of case management and organization (NYSCEF Doc No. 30 at 7, 9, 11 and 13). Plaintiff's performance began to deteriorate in 2010-2011, particularly in the areas of case management and documentation (*id*. at 18), a criticism repeated in later evaluations.

Defendants have also shown that plaintiff cannot demonstrate they were motivated, even in part, by an improper discriminatory animus. An improper discriminatory motive may be inferred when there is a nexus between a defendant's discriminatory statements or references to the plaintiff's protected class and the defendant's actions (*Godbolt v Verizon N.Y., Inc.*, 115 AD3d 493, 495 [1st Dept 2014], *lv denied* 24 NY3d 901 [2014], quoting *Schreiber v Worldco, LLC*, 324 F Supp 2d 512, 518 [SD NY 2004]). In *Chiara v Town of New Castle* (126 AD3d 111, 124 [2d Dept 2015], *lv dismissed* 26 NY3d 945 [2015]), the Court explained:

> "[i]n determining whether a comment is probative of discrimination, the following factors are considered: (1) whether the comment was made by a decisionmaker, a supervisor, or a low-level coworker, (2) whether the remark was made close in time to the adverse employment decision, (3) whether a reasonable juror could view the remark as discriminatory, and (4) the context of the remark – that is, whether the remark related to the decision-making process" (*id*.).

Plaintiff identified four white detectives who allegedly made disparaging remarks about his accent. These detectives, though, never supervised plaintiff nor did he identify them as decision makers. Critically, the record does not reflect that plaintiff ever informed defendants about these remarks. Moreover, there is no evidence that any of the remarks were made close in time to the actions plaintiff claims disadvantaged him (*see Breitstein v Michael C. Fina Co.*, 156 AD3d 536, 537 [1st Dept 2017]). Accordingly, defendants have demonstrated their entitlement to summary judgment.

155802/2013  CRUMP, CONRAD L. vs. CITY OF NEW YORK
Motion No. 001

Page 19 of 32

[* 19]

Plaintiff, in response, fails to put forward any evidence demonstrating that defendants' proffered reason was pretextual or that discrimination was a motivating factor (*see McIntosh*, 202 AD3d at 482; *Matias v New York & Presbyt. Hosp.*, 137 AD3d 649, 650 [1st Dept 2016]).

Plaintiff argues that defendants' unjust criticism of his work constitutes pretext. Plaintiff contends that he received positive evaluations until 2010, when Gibbons began supervising him. The fact that plaintiff had previously received positive evaluations, by itself, though, is insufficient to raise a triable issue (*see Kwong*, 204 AD3d at 444). Additionally, Gibbons, who was first assigned to the 32nd Precinct on March 21, 2007, rated plaintiff favorably on his 2007-2008 and 2008-2009 annual evaluations (NYSCEF Doc No. 30 at 7 and 9), thereby undermining any assertion that Gibbons mistreated plaintiff because of his race, color or national origin (*see Weir v Montefiore Med. Ctr.*, 208 AD3d 1122, 1123 [1st Dept 2022], *lv denied* 39 NY3d 911 [2023]).

Plaintiff relies on the positive evaluations he received while assigned to the 7th Precinct and a December 2016 recommendation from Inspector Steven Hellman ("Hellman"), then a captain and the commanding officer of the 7th Precinct, nominating plaintiff for a discretionary promotion to detective, third grade (NYSCEF Doc No. 46, Cronin affirmation, exhibit 8). Such proof, however, is inadequate to show that the criticism of plaintiff's performance as a detective in the 32nd Precinct was false, misleading or incomplete (*see Ahmed v 2 W. 46th St. Mgt., LLC*, 210 AD3d 485, 485-486 [1st Dept 2022]). Hellman and Wynne, plaintiff's supervisors at the 7th Precinct, both testified that, although they worked in patrol at the 32nd Precinct during plaintiff's time there, they were never in a position to evaluate his performance as part of the detective squad at that precinct (NYSCEF Doc No. 42, Cronin affirmation, exhibit 4, Hellman tr at 14, 16, 19-20, and 68-69; NYSCEF Doc No. 43 at 21 and 24). Consequently, plaintiff's more recent, positive

155802/2013  CRUMP, CONRAD L. vs. CITY OF NEW YORK                    Page 20 of 32
Motion No.  001

20 of 32

evaluations fail to raise a triable issue of fact as to whether defendants' reason was pretextual (*see Cadet-Legros v New York Univ. Hosp. Ctr*., 135 AD3d 196, 204 [1st Dept 2015]).

Furthermore, "'an employee's general disagreement with a supervisor's evaluation of the employee's job performance, by itself, does not create an inference of discrimination or constitute proof of pretext'" (*Cardwell v Davis Polk & Wardwell LLP*, 2023 WL 2049800, *21, 2023 US Dist LEXIS 26907, *66-67 [SD NY, Feb. 16, 2023, No. 1:19-cv-10256-GHW] [citation omitted]). On this point, plaintiff does not dispute that he received two command disciplines for poor case management (NYSCEF Doc No. 39 at 70) or that he was found guilty after trial of failing to timely perform his assignments (NYSCEF Doc No. 34 at 1). Plaintiff has not challenged the disposition of that charge, nor has he disputed defendants' proof that they repeatedly warned him of his deficient work performance (*see Cadet-Legros*, 135 AD3d at 203-204).

Plaintiff has also failed to tender any evidence of an improper discriminatory motive (*see Fruchtman v City of New York*, 129 AD3d 500, 501 [1st Dept 2015]). Plaintiff argues that his supervisors were present when Quilty, Blake, Hull and Kiln made derogatory slurs about his accent (NYSCEF Doc No. 38 at 4), but he has not presented any admissible evidence substantiating this assertion, as a memorandum of law does not constitute admissible evidence (*see Benedetto v Hyatt Corp*., 203 AD3d 505, 506 [1st Dept 2022]["[a]s with any summary judgment motion, the evidence submitted … in opposition must be tendered in admissible form"]). As explained above, plaintiff failed to identify any comments, statements or remarks made by a supervisor or decisionmaker that either directly or indirectly referenced his race, color or national origin (*see Etienne v MTA N.Y. City Tr. Auth*., 223 AD3d 612, 613 [1st Dept 2024]). Plaintiff complains that Gibbons once threatened to "take [his] legs" (NYSCEF Doc No. 39 at 60), but this remark is facially neutral. Not only are stray, isolated remarks, without more, insufficient evidence of

155802/2013 CRUMP, CONRAD L. vs. CITY OF NEW YORK
Motion No. 001

Page 21 of 32

discrimination (*see Breitstein*, 156 AD3d at 537; *Fruchtman*, 129 AD3d at 501), but where, as here, "plaintiff's sole evidence of discriminatory animus turns on facially neutral remarks, those neutral remarks are insufficient to support a claim of discriminatory motivation" (*Trower v Mount Sinai Hosp*., 2018 WL 4283724, *6, 2018 US Dist LEXIS 152341, *17 [SD NY, Sept. 6, 2018, No. 16-cv-4322 (PKC)]).

Plaintiff's claim of disparate treatment, likewise, fails in the absence of any evidence attributing such treatment to his race, color or national origin. "Disparate treatment is the treatment of persons in a manner less favorable than others because of their [protected characteristic]" (*Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 322 [2004] [Smith, J., concurring]). "A showing that similarly situated employees belonging to a different … group received more favorable treatment can … serve as evidence that the employer's proffered legitimate, non-discriminatory reason for the adverse job action was a pretext for racial discrimination" (*Graham v Long Island R.R*., 230 F3d 34, 43 [2d Cir 2000]). However, "mere disparate treatment, without a showing that the disparity was based on a protected characteristic, does not amount to discrimination" (*Abe v New York Univ*., 169 AD3d 445, 447 [1st Dept 2019], *lv dismissed* 34 NY3d 1089 [2020]). Here, plaintiff has not furnished any evidence linking his treatment to a hostility or bias towards his race, color or national origin (*see Averbeck v Culinary Inst. of Am*., 180 AD3d 862, 863 [2d Dept 2020]; *Short v Deutsche Bank Sec., Inc*., 79 AD3d 503, 505 [1st Dept 2010]). Plaintiff alleges only that his white counterparts received favorable treatment. This is insufficient, particularly on a motion for summary judgment, to establish that this disparity was due to his race, color or national origin (*Short*, 79 AD3d at 505). For instance, plaintiff argues that he was penalized for failing to report to work, but when Conners was AWOL, Gibbons directed another detective to submit a "28" for him. Plaintiff, however, ignores the fact that when he failed

155802/2013   CRUMP, CONRAD L. vs. CITY OF NEW YORK
Motion No.  001

Page 22 of 32

to report to work on July 20, 2013, Leo submitted a UF-28 for him (NYSCEF Doc No. 40 at 13-14 and 27). As such, plaintiff cannot be heard to complain when he benefited from the exact conduct he now alleges was discriminatory. Moreover, plaintiff was found guilty after trial for submitting a UF-28 stating that the week of July 30, 2013 was his annual vacation pick when it was not (NYSCEF Doc No. 34 at 3). Plaintiff has not established that Conners or any white detective engaged in the same type of conduct (*see Averbeck*, 180 AD3d at 863 [no showing that plaintiff and his colleagues were similarly situated]).

Restricting plaintiff from seeking overtime can constitute an adverse employment action (*Bilitch v New York City Health & Hosps. Corp.*, 194 AD3d 999, 1001 [2d Dept 2021]), and an employee on modified assignment, like plaintiff, who was placed on performance monitoring after his suspension, is not permitted to work paid detail (NYSCEF Doc No. 39 at 124; NYSCEF Doc No. 43 at 50). But, plaintiff has presented no evidence demonstrating that his removal from paid detail or the denials of his requests for overtime were predicated on his race, color or national origin (*see Bilitch*, 194 AD3d at 1002).

In sum, plaintiff has failed to present any evidence showing that he was treated less well than other employees because of his race, color or national origin, that defendants were motivated by an improper discriminatory animus based on race, color or national origin, or that defendants took plaintiff's race, color or national origin into account in their decision-making process (*see Reichman v City of New* York, 179 AD3d 1115, 1118 [2d Dept 2020], *lv denied* 36 NY3d 904 [2021]; *Cubelo*, 168 AD3d at 637; *Matias*, 137 AD3d at 650). The first, second, third, sixth, seventh and eighth causes of action are dismissed.

155802/2013  CRUMP, CONRAD L. vs. CITY OF NEW YORK
Motion No. 001

Page 23 of 32

23 of 32

[* 23]

B.    Hostile Work Environment

The fifth and tenth causes of action plead claims for a hostile work environment under the NYSHRL and NYCHRL, respectively. "A plaintiff claiming a hostile work environment animated by discrimination in violation of the NYSHRL must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment" (*Bilitch*, 194 AD3d at 1003). The court must look at the "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance'" (*Forrest*, 3 NY3d at 310-311 [citation omitted]). The conduct must be such that it creates both a subjectively and objectively hostile environment (*id.*). The conduct underlying a hostile work environment claim under the NYCHRL need not meet the severe and pervasive standard. Rather, the plaintiff need only show that he or she was treated less well than other employees because of the plaintiff's relevant characteristic (*Pitter-Green v NYU Langone Med. Ctr.*, 223 AD3d 576, 579 [1st Dept 2024]). That said, conduct amounting to "no more than petty slights and trivial inconveniences" cannot support a hostile work environment claim (*Williams*, 61 AD3d at 80).

Defendants have demonstrated that the conduct at issue was not so severe and pervasive so as to permeate the workplace with discrimination or alter the conditions of plaintiff's employment (*see Reichman*, 179 AD3d at 1118; *Chin v New York City Hous. Auth.*, 106 AD3d 443, 444-445 [1st Dept 2013], *lv denied* 22 NY3d 861 [2014]; *Silvis*, 95 AD3d at 665). A hostile work environment claim must be grounded in repeated conduct (*Blackman v Metropolitan Tr. Auth.*, 206 AD3d 602, 605 [2d Dept 2022]; *see also Brennan v Metropolitan Opera Assn.*, 192 F3d 310, 318 [2d Cir 1999] ["a plaintiff must still prove that the incidents were 'sufficiently continuous and

155802/2013   CRUMP, CONRAD L. vs. CITY OF NEW YORK
Motion No.  001

Page 24 of 32

24 of 32

[* 24]

concerted' to be considered pervasive"] [citation omitted]). Plaintiff identified the telephone call with Gibbons and the two cancelled meetings with Pulaski as the objectionable conduct underlying his hostile work environment claims (NYSCEF Doc No. 39 at 116). These discrete episodes hardly qualify as repeated conduct for purposes of the NYSHRL (*see Blackman*, 206 AD3d at 605).

"[M]aking fun of an employee's accent is offensive and inappropriate, and may cause a decidedly unpleasant work environment" (*Hanna v New York Hotel Trades Council & Hotel Assn. of NY City Health Ctr., Inc*., 18 Misc 3d 436, 444 [Sup Ct, NY County 2007]). Here, plaintiff's testimony that Quilty, Blake, Hull and Kiln "sometimes" joked about his accent fails to establish the type of relentless, repeat conduct necessary to sustain a hostile work environment claim (*see Zheng-Smith v Nassau Health Care Corp*., 2021 WL 4097316, *3, 2021 US App LEXIS 27084, *7 [2d Cir, Sept. 9, 2021], *cert denied* 142 S Ct 1675 [2022] [the plaintiff failed to demonstrate that a supervisor's ridicule or mocking of her accent was sufficiently severe and pervasive]; *Tolbert v Smith*, 790 F3d 427, 439 [2d Cir 2015] [no showing that the remarks constituted "'a steady barrage of opprobrious racial comments'"] [citation omitted]; *Benn v City of New York*, 2011 WL 839495, *10, 2011 US Dist LEXIS 22226, *27-28 [ED NY, Feb. 28, 2011, No. 07-CV-326 (NGG) (JMA)], *affd* 482 Fed Appx 637 [2d Cir 2012] [episodic rather than continuous comments on the plaintiff's accent insufficient to sustain a hostile work environment claim]; *but see Hribovsek v United Cerebral Palsy of N.Y. City*, 223 AD3d 618, 621 [1st Dept 2024] [defendant "mocked plaintiff's accent on a weekly basis, including in the presence of her coworkers, claimed she did not understand plaintiff, and offered to educate plaintiff on how to speak English"]). Plaintiff could not pinpoint when the allegedly disparaging remarks were made, stating only that "I guess it depends on their moods, or whatever the day may be" (NYSCEF Doc No. 39 at 101-102). "[O]nly occasional incidents and remarks … [without] cit[ing] specifics as to

155802/2013  CRUMP, CONRAD L. vs. CITY OF NEW YORK
Motion No.  001

Page 25 of 32

25 of 32

the manner, frequency or context of the alleged conduct" are not enough to support a hostile work environment claim (*Hanna*, 18 Misc 3d at 444). Additionally, there is no competent evidence that the inappropriate comments unreasonably interfered with plaintiff's work performance (*see e.g Daeisadeghi v Equinox Great Neck, Inc.*, 794 Fed Appx 61, 64 [2d Cir 2019]). And while an employer who condones such behavior may be liable, plaintiff has not tendered any admissible evidence demonstrating that he reported those comments to his supervisors or that his supervisors were aware of and approved such conduct (*see Forrest*, 3 NY3d at 311-312 [no evidence that the defendant "knew of, let alone condoned or acquiesced in, the epithets"]). Last, plaintiff claims he was singled out for discipline for insignificant, minor violations, but he has not presented any evidence that such actions were taken because of his membership in a protected class (*see Pitter-Green*, 223 AD3d at 578-579). The fifth cause of action for a hostile work environment under the NYSHRL is dismissed.

Under the NYCHRL, a single comment may be sufficient for a hostile work environment claim, provided the comment "is made in circumstances where such comment or incident would signal views about the role of … people [sharing the plaintiff's protected characteristic] in the workplace" (*Biggan v City of New York*, 192 AD3d 498, 499 [1st Dept 2021]). Kiln's remark telling plaintiff to "control your Jamaican boy from committing so much crime here" (NYSCEF Doc No. 39 at 101) constitutes such an isolated circumstance (*see Pitter-Green*, 223 AD3d at 579), but it does not reflect Kiln's view of a person sharing the plaintiff's protected characteristics in the workplace (*compare Golston-Green*, 184 AD3d at 43 [police captain's comment that "he did not 'like women on this job because they have babies,' plainly expresses a view of the role of women in the workplace"]). Furthermore, the other comments amount to nothing more than petty slights and trivial inconveniences and are not actionable (*see Ji Sun Jennifer Kim v Goldberg, Weprin,*

155802/2013  CRUMP, CONRAD L. vs. CITY OF NEW YORK
Motion No.  001

Page 26 of 32

26 of 32

[* 26]

*Finkel, Goldstein, LLP*, 120 AD3d 18, 26 [1st Dept 2014]). Therefore, the tenth cause of action for a hostile work environment under the NYCHRL is dismissed.

### C. Retaliation

The fourth and ninth causes of action plead claims for retaliation under the NYSHRL and NYCHRL, respectively. The NYSHRL and NYCHRL make it unlawful to discriminate against an employee for opposing a discriminatory practice (Executive Law § 296 [7]; Administrative Code § 8-107 [7]). To state a claim for retaliation under the NYSHRL, the plaintiff must establish that he or she had engaged in a protected activity of which the defendant was aware, the plaintiff suffered an adverse action, and the existence of a causal connection between the protected activity and the adverse action (*Franco v Hyatt Corp.*, 189 AD3d 569, 571 [1st Dept 2020]; *Fletcher v Dakota, Inc.*, 99 AD3d 43, 51 [1st Dept 2012]). "[T]he causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action" (*Herskowitz v State of New York*, 222 AD3d 587, 588 [1st Dept 2023] [internal quotation marks and citation omitted]).

The elements for a retaliation claim under the NYCHRL are similar but substitutes adverse action for action that disadvantages the plaintiff (*Harrington*, 157 AD3d at 585) or action that is "'reasonably likely to deter a person from engaging in protected activity'" (*Franco*, 189 AD3d at 570, quoting Administrative Code § 8-107 [7]). Retaliation claims under the NYSHRL are analyzed under the *McDonnell Douglas* framework (*McRedmond v Sutton Place Rest. & Bar, Inc.*, 95 AD3d 671, 674 [1st Dept 2012]), whereas retaliation claims under the NYCHRL must be analyzed under both the *McDonnell Douglas* and mixed-motive frameworks (*Ellison v Chartis Claims, Inc.*, 178 AD3d 665, 667-668 [2d Dept 2019], *lv dismissed* 35 NY3d 997 [2020]). A

155802/2013  CRUMP, CONRAD L. vs. CITY OF NEW YORK
Motion No.  001

Page 27 of 32

27 of 32

defendant moving for summary judgment dismissing a retaliation claim brought under the NYSHRL or the NYCHRL "must demonstrate that the plaintiff cannot make out a *prima facie* claim of retaliation or, having offered legitimate, nonretaliatory reasons for the challenged actions, that there exists no triable issue of fact as to whether the defendant's explanations were pretextual" (*Reichman*, 179 AD3d at 1119-1120 [internal quotation marks and citation omitted]).

"[O]pposing or complaining about unlawful discrimination" qualifies as a protected activity (*Forrest*, 3 NY3d at 313), and participation in a protected activity is a key element for a retaliation claim. In this case, defendants have demonstrated that plaintiff did not relay a complaint about discrimination on the basis of race, color or national origin to the OEEO office, Levine, Pulaski or IAB (*see Diluglio v Liberty Mut. Group, Inc.*, 230 AD3d 643, 645-646 [2d Dept 2024]; *Hribovsek*, 223 AD3d 621). Plaintiff's complaints to the OEEO office about "being treated fairly" and to Levine about a "problem" (NYSCEF Doc No. 39 at 105 and 109) are too vague to establish that he had made a specific complaint about discrimination (*see Aykac v City of New York*, 221 AD3d 494, 495 [1st Dept 2023]; *Lent v City of New York*, 209 AD3d 494, 495 [1st Dept 2022]). Plaintiff's communications with Pulaski and IAB are equally vague (*see Kwong*, 204 AD3d at 445; *Gonzalez v EVG, Inc.*, 123 AD3d 486, 487 [1st Dept 2014]). Furthermore, there is no evidence demonstrating that plaintiff complained to his supervisors about the remarks made by Blake, Quilty, Hull and Kiln.

The filing of a summons and complaint alleging discrimination is a protected activity (*Anandaraja v Icahn Sch. of Medicine at Mount Sinai*, 227 AD3d 533, 536 [1st Dept 2024] [filing a federal complaint is a protected activity]), and plaintiff commenced this action on June 25, 2013. Plaintiff posits that, shortly thereafter, defendants retaliated by disciplining him.

155802/2013   CRUMP, CONRAD L. vs. CITY OF NEW YORK
Motion No.  001

Page 28 of 32

[* 28]

Defendants have set forth nonretaliatory reasons for their actions. First, "an employer's continuation of a course of conduct that had begun before the employee complained does not constitute retaliation because, in that situation, there is no causal connection between the employee's protected activity and the employer's challenged conduct" (*Melman*, 98 AD3d at 129). "If … 'the discrimination was just as bad before the employee complained as it was afterwards, then the employee's complaints cannot be said to have led to that discriminatory behavior'" (*Hall v New York City DOT*, 701 F Supp 2d 318, 339 [ED NY 2010], *quoting Hall v Parker Hannifan Corp.*, 824 F Supp 2d 464, 469 [WD NY 2009]).

Here, plaintiff declined to accept the proposed penalty for two supervisors' complaints on his failure to timely document his work and opted for a statutory hearing. As a result, defendants requested a single charge and specification which was made the same day plaintiff brought this action. Contrary to plaintiff's contention, there is no evidence defendants were aware that the summons and complaint had been filed, as he did not serve process upon the City or the NYPD until July 12, 2013 (NYSCEF Doc Nos. 3-4). Thus, the first charge and specification is merely a continuation of the same type of conduct that occurred before plaintiff filed the summons and complaint (*see Cadet-Legros*, 135 AD3d at 206-207 ["all the discord – in scope, kind, and frequency – preexisted her internal complaint"]).

The second set of charges and specifications stems from defendants' cancellation of plaintiff's previously approved UF-28 for vacation the week of July 30, 2013. After plaintiff failed to report to work that week, defendants suspended him and brought charges and specifications against him for being AWOL, for refusing to comply with two orders to report to work, and for submitting a UF-28 indicating that that week was his annual scheduled vacation pick. Plaintiff's failure to seek prior approval from a commanding officer before taking unauthorized leave

155802/2013  CRUMP, CONRAD L. vs. CITY OF NEW YORK
Motion No.  001

Page 29 of 32

29 of 32

constitutes a legitimate, non-retaliatory reason for issuing those charges (*see Bantamoi v St. Barnabas Hosp.*, 146 AD3d 420, 451 [1st Dept 2017]). Plaintiff does not dispute that he was AWOL, disobeyed two lawful orders from his superiors to report to work, and submitted a UF-28 form indicating that the week was his scheduled annual pick when it was not. Indeed, Weisel concluded after trial that plaintiff was guilty of all charges. In his decision, Weisel cited plaintiff's admission that the Patrol Guide requires members to receive prior approval from their commanding officers to change annual vacation picks, and plaintiff's testimony that "he did not speak to a supervisor before submitting the request because '[t]here was no need for [him] to do that'" (NYSCEF Doc No. 28 at 10-11). Plaintiff has not challenged the disposition.

However, less than one month had passed between the filing of the complaint and the July 20, 2013 decision cancelling plaintiff's vacation and the decision to request new charges and specifications. The close temporal proximity between the commencement of the action and defendants' actions is sufficient to raise a triable issue on causation (*see Rubin v Napoli Bern Ripka Shkolnik, LLP*, 228 AD3d 595, 597 [1st Dept 2024]; *Doe v New York City Police Dept.*, 190 AD3d 411, 413 [1st Dept 2021] [retaliation claim reinstated where the plaintiff faced "at least some 'new' or escalated conduct after the protected activities took place"]). Given defendants' failure to produce any affidavits or testimony concerning their intent at the time, "it is unclear whether the motivation for that conduct was retaliation or continued discrimination" (*Long v Aerotek, Inc.*, 202 AD3d 1216, 1222 [3d Dept 2022]). Accordingly, the motion, insofar as it seeks summary judgment dismissing the fourth and ninth causes of action, is denied.

155802/2013   CRUMP, CONRAD L. vs. CITY OF NEW YORK
Motion No.  001

Page 30 of 32

[* 30]

D.      Whether the NYPD is a Proper Party

Plaintiff alleges, and defendants admit, that the NYPD is an official City agency (NYSCEF Doc No. 26, ¶ 10, NYSCEF Doc No. 13, amended answer, ¶ 10).  As a City agency, the NYPD is not an entity amenable to suit (*see Metwally v City of New York*, 215 AD3d 820, 823 [2d Dept 2023]; *Matter of Carpenter v New York City Hous. Auth.*, 146 AD3d 674, 674 [1st Dept 2017], *lv denied* 29 NY3d 911 [2017], citing New York City Charter § 396]).  Plaintiff did not address this part of the motion (*see Hernandez v NY Prepaid Wireless LLC*, 206 AD3d 409, 411 [1st Dept 2022]).  Accordingly, the complaint against the NYPD is dismissed.

E.      Punitive Damages

Plaintiff also seeks to recover punitive damages, but "punitive damages are not recoverable against a state or its political subdivisions, which includes a municipality" (*Dorian v City of New York*, 129 AD3d 445, 446 [1st Dept 2015]).  Plaintiff did not address this part of the motion, and thus, his claim for punitive damages is dismissed as abandoned (*see Hernandez*, 206 AD3d at 411).

155802/2013   CRUMP, CONRAD L. vs. CITY OF NEW YORK                                        Page 31 of 32
Motion No.  001

31 of 32

[* 31]

## Conclusion

For all of the reasons set forth herein, it is hereby:

**ORDERED** that the motion brought by defendants City of New York, the New York City Police Department, Raymond Kelly, Commissioner of the NYC Police Department, Deputy Inspector William McSorley, Sergeant James Leo, Lieutenant Robert Gibbons, Captain Jonathan Levine and Captain Jay McMahon for summary judgment dismissing the complaint is granted to the extent of:

(1) dismissing the first, second, third, fifth, sixth, seventh, eighth and tenth causes of action; and

(2) dismissing plaintiff's demand for punitive damages; and

(3) dismissing the complaint in its entirety against defendant the New York City Police Department; and

(4)  the balance of the motion is otherwise denied; and it is further

**ORDERED** that the Clerk is directed to enter judgment accordingly.

**11/30/2024**
**DATE**

**J. MACHELLE SWEETING, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | GRANTED IN PART | X | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**155802/2013   CRUMP, CONRAD L. vs. CITY OF NEW YORK**
**Motion No.  001**

**Page 32 of 32**