Shibley v City of New York (2026 NY Slip Op 50039(U))

[*1]

Shibley v City of New York

2026 NY Slip Op 50039(U)

Decided on January 12, 2026

Supreme Court, New York County

Kingo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 12, 2026
Supreme Court, New York County

Noah Shibley, Plaintiff,

againstThe City of New York, Defendant

Index No. 100220/2025

Plaintiff pro se
For Defendant City of New York: Office of Corporation Counsel

Hasa A. Kingo, J.

The following papers, numbered 1, 2, 3, were read on this application for Motion Seq. 002
Notice of Motion/ Affidavits No(s) 1, 2
Answering Affidavits No(s) 3
The following papers, numbered 4, were read on this application for Motion Seq. 003
Notice of Motion/ Affidavits No(s) 4
Defendant the City of New York (the "City") moves, under Motion Sequence 002 ("Motion Seq. 002"), to dismiss Plaintiff Noah Shibley's ("Plaintiff") complaint, and under Motion Sequence 003 ("Motion Seq. 003"), to dismiss Plaintiff's amended complaint pursuant to CPLR § 3211(a)(7). Plaintiff opposes both motions. For the reasons set forth herein, Motion Seq. 002 is denied as moot, and Motion Seq. 003 is granted.BACKGROUNDPlaintiff commenced this action on February 25, 2025, to recover damages allegedly sustained when he was purportedly discriminated against in violation of New York State Executive Law § 296, also known as the New York State Human Rights Law (the "NYSHRL") and the Administrative Code of the City of New York § 8-107, also known as the New York City Human Rights Law (the "NYCHRL"). Specifically, Plaintiff alleges that he is a "white male citizen of the United States, of United States' national origin" (Amended complaint ¶ 2).[FN1]
From [*2]May 2024 to November 2024, Plaintiff was employed by the New York City Department of Parks and Recreation (the "Parks Department") as a temporary seasonal employee through their Parks Opportunity Program ("POP") (id. ¶ 26). POP is a "six-month maintenance position designed to provide participants with temporary employment, job training, and career development services" (id. ¶ 5; Coles memorandum of law at 2).
Plaintiff alleges that during his POP placement, he was denied a leaf blower (Amended complaint ¶¶ 30, 31, 33, 36), he was singled out for not working (id. ¶¶ 15-21), and his supervisor made a comment that in the 1980s "white boys would chase him and his friends" (id. ¶¶ 8-12). Plaintiff also alleges that his career counselor failed to advance him (id. ¶ 38), and that after his POP placement ended, the Parks Department did not offer him a position (id. ¶¶ 26, 41). In addition to his allegations regarding the Parks Department, Plaintiff alleges that he was not hired by the Bronx District Attorney, and that the City failed to hire him for "200 other jobs" (id. ¶¶ 43, 44, 47).
Plaintiff's amended complaint interposes causes of action for race, sex, and national origin discrimination in violation of the NYSHRL and the NYCHRL, hostile work environment for which the City is strictly liable under the NYCHRL, and "private harm suffered from public corruption/refusal to hire in furtherance of public corruption" (id. at 10-3). On August 29, 2025, the City filed its first motion to dismiss (Motion Seq. 002). During the pendency of the motion, Plaintiff served his amended complaint. Thereafter, the City filed a second motion to dismiss based on the allegations raised in the amended complaint (Motion Seq. 003).
By way of its motions, the City argues that Plaintiff's amended complaint fails to state a cause of action for race, sex, or national origin discrimination because Plaintiff has not pleaded any facts demonstrating adverse employment action as compared to "a series of generalized grievances" (Coles memorandum of law at 6). The City contends that POP is a temporary work placement that does not create permanent employment rights or expectations, and Plaintiff's 2024 POP placement ended because the program expired, not because of any termination, demotion, or disciplinary action against him (id. at 6). Moreover, the City argues that extension of the POP placement is discretionary and not guaranteed (id.). The City also argues that Plaintiff's allegations that the Parks Department failed to develop him as an employee or provide him with a leaf blower do not rise to the level of adverse employment action (id.). With respect to Plaintiff's failure to hire allegations, the City contends that Plaintiff failed to allege any facts demonstrating that he was not hired because of his sex, race, or national origin, and that Plaintiff's subjective belief that he was the most qualified for the position does not constitute evidence of discrimination (id. at 7). The City argues that Plaintiff also failed to identify any requirements for the positions at issue to plausibly allege that he was qualified for them (id.). Finally, the City contends that Plaintiff failed to allege any facts demonstrating that he was treated less well because of his race, sex, or national origin, or that these were even motivating factors (id. at 8). Instead, Plaintiff's complaint identifies the race, sex, and national origin of those who he claims either discriminated against him or created a hostile work environment" (id.). Additionally, the City contends that Plaintiff's allegation that he was hired to work in POP on two separate occasions undercuts any suggestion that the Parks Department harbors discriminatory animus toward white American men (id.). Finally, with respect to Plaintiff's cause [*3]of action for "private harm suffered from public corruption/refusal to hire in furtherance of public corruption" is substantively indistinguishable from his prior failure to hire in contravention of public policy for which there is no cause of action under New York Law (id. at 12).
Plaintiff opposes the City's motion on the grounds that he has pleaded sufficient facts to state his causes of action (Shibley memorandum of law).
DISCUSSION
At the outset the court addresses the unique procedural posture with respect to the City's motions. Specifically, the City has two open motions seemingly for the same relief; one to dismiss Plaintiff's complaint and the other to dismiss Plaintiff's amended complaint. In this instance, Plaintiff served his amended complaint during the pendency of the City's first pre-answer motion to dismiss, and it is therefore an amendment as of right which supersedes the original complaint (CPLR § 3211 [f]; Zaiger LLC v Bucher L. PLLC, 238 AD3d 687, 687 [1st Dept 2025] [once an amended complaint is served, the original complaint is superseded and the amended complaint is the only complaint in the action]; Roam Cap., Inc. v Asia Alternatives Mgmt. LLC, 194 AD3d 585, 585-586 [1st Dept 2021]). Rather than apply its pending motion to dismiss to the amended pleading, the City filed a new motion, Motion Seq. 003 (Zaiger, 238 AD3d at 687). To add to this procedural quagmire, Plaintiff served opposition to Motion Seq. 002 but not Motion Seq. 003. In light of this posture, and in recognition that Plaintiff is a self-represented litigant, the court will apply Plaintiff's arguments in opposition to Motion Seq. 002 to Motion Seq. 003.[FN2]
Moreover, because Plaintiff's complaint is now superseded and the only complaint in the action, Motion Seq. 002 is denied as moot.
Turning now to Motion Seq. 003, on a motion to dismiss brought under CPLR § 3211 (a)(7), the court must "accept the facts as alleged in the complaint as true, accord the plaintiff the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Leon v Martinez, 84 NY2d 83, 87-88 [1994][citations omitted]). Ambiguous allegations must be resolved in the plaintiff's favor (see JF Capital Advisors, LLC v Lightstone Group, LLC, 25 NY3d 759, 764 [2015]). "The motion must be denied if from the pleadings' four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law" (511 West 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 152 [2002][internal citations omitted]). "Whether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss" (Cortlandt Street Recovery Corp. v Bonderman, 31 NY3d 30, 38 [2018]), but a pleading consisting of "bare legal conclusions" is insufficient (Leder v Spiegel, 31 AD3d 266, 267 [1st Dept 2006], aff'd 9 NY3d 836 [2007], cert denied 552 US 1257 [2008]) and "the court is not required to accept factual allegations that are plainly contradicted by the documentary evidence or legal conclusions that are unsupportable based upon the undisputed facts" (Robinson v [*4]Robinson, 303 AD2d 234, 235 [1st Dept 2003]).
The NYSHRL and the NYCHRL proscribe employment discrimination based on an individual's race, gender, and national origin (Executive Law § 296 [1] [a]; Administrative Code of City of NY § 8-107 [1][a]). Claims brought under the NYSHRL and the NYCHRL are reviewed under notice pleading standards and must give "fair notice of the nature of the plaintiff's claims and their grounds" (Petit v Department of Educ. of the City of NY, 177 AD3d 402, 403 [1st Dept 2019]). In 2019, the NYSHRL was amended to align the language and purpose of the statute with the language and purpose of the NYCHRL (see Kwong v City of New York, 204 AD3d 442, 444 n 1 [1st Dept 2022], lv dismissed 38 NY3d 1174 [2022]; Golston-Green v City of New York, 184 AD3d 24, 41 n 3 [2d Dept 2020]. Therefore, as of October 11, 2019, and specifically for claims arising as of such date, both the City and State Human Rights Laws must be liberally construed to accomplish the remedial purposes that they serve (Syeed v Bloomberg L.P., 41 NY3d 446, 451 [2024]).
However, as neat and clear as these pronouncements are, exactly how this liberal construction operates has led to various results (Desiderio v Hudson Techs., Inc., 2025 WL 1285278, at *9—10 [SD NY 2025] ["Since the passage of the amendments, courts have not yet clarified whether the NYSHRL's liability standard is now coextensive with that of the NYCHRL, or whether it requires more, so as to impose a standard between federal and city law, however, courts have consistently recognized that the current NYSHRL standard is intended to come closer to the standard of the NYCHRL"]; Yost v Everyrealm, Inc., 657 F Supp 3d 563, 578 [SD NY 2023] ["case law, however, has not definitively resolved whether the effect of the 2019 amendment is to make the NYSHRL's standard identical to that of the NYCHRL—or merely closer to it"]). Some courts have continued to apply the more stringent pre-amendment standard (Motayne v Specialty Food Ass'n, Inc., 85 Misc 3d 1204[A] [Sup Ct, NY County 2025]; Rubin v Morrison, 2025 NY Slip Op 33891[U] at *6 [Sup Ct, NY County 2025]). Whereas others have analyzed post-amendment claims under the more lenient standard (Elco v Aguiar, 226 AD3d 649, 651 [2d Dept 2024]; Levi v Rondinella, 2025 WL 3709262, at *5 [Sup Ct, NY County 2025]).
To truly understand the appropriate governing standard(s), it is necessary to look back. In doing so, the standards which used to govern a cause of action for employment discrimination largely mirrored Title VII (Wright v White Plains Hosp. Med. Ctr., 237 AD3d 1143, 1144 [2d Dept 2025] ["The standards for establishing unlawful discrimination under the NYSHRL previously were the same as those governing Title VII cases"]; Desiderio, 2025 WL 1285278, at *9—10 ["Employment discrimination claims under the NYSHRL historically have been analyzed identically to claims under Title VII"]; Edelman v NYU Langone Health Sys., 2022 WL 4537972, at *14 [SD NY 2022] ["Until October 11, 2019, discrimination claims under the NYSHRL and Title VII were generally treated as analytically identical and addressed together"]). Thus, prior to the amendments, to state a cause of action for employment discrimination under the NYSHRL, a plaintiff was required to allege facts demonstrating that: (1) he is a member of a protected class, (2) he was qualified to hold the position, (3) that he was terminated from employment or suffered adverse employment action, and (4) that the termination or adverse employment action occurred under circumstances giving rise to an inference of discrimination (Harrington v City of New York, 157 AD3d 582, 584 [1st Dept 2018]; Golston-Green, 184 AD3d at 37 ["Under the State Human Rights Law [. . .] to be actionable, the adverse employment action must be "a materially adverse change in the terms [*5]and conditions of employment"]). Under the NYCHRL however, a plaintiff need only plead that they were treated differently under circumstances giving rise to an inference of discrimination, also known as the differential treatment standard (Herrington v Metro-N. Commuter R. Co., 118 AD3d 544, 544 [1st Dept 2014]; Askin v Dep't of Educ. Of City of New York, 110 AD3d 621, 622 [1st Dept 2013]). This difference between adverse action on the one hand and differential treatment on the other effectively foreclosed plaintiffs from redress under the NYSHRL where they were subjected to some discrimination, but not enough that it materially altered the terms and conditions of their employment.
As such, if courts are to continue to apply the adverse action standard of review, it would not give any effect to the 2019 amendments which were adopted for the very purpose of aligning the NYSHRL with the NYCHRL (Syeed, 41 NY3d at 451; Kwong, 204 AD3d at 444 n 1; Golston-Green, 184 AD3d at 41 n 3). It is worth noting that Title VII no longer requires a plaintiff to plead or prove that the adverse treatment was material (Desiderio, 2025 WL 1285278 at *9—10 ["Nonetheless, because a Title VII plaintiff need no longer establish the materiality of the adverse action, the gap between the strictest standard—federal law—and the most lenient—the NYCHRL—has closed considerably"]).
Furthermore, the statutory text itself demonstrates that the Legislature already contemplated and dispensed with the pre-amendment heightened standard of review (see Executive Law § 300 [the NYSHRL "shall be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed"] [emphasis added]).
Finally, to the extent any lingering doubt remains as to whether the NYSHRL aligns with—or instead adopts a standard falling between—Title VII and the NYCHRL, that question was definitively resolved in April of this year. In Wright v White Plains Hosp. Med. Ctr. (237 AD3d 1143, 1145—1146 [2d Dept 2025]), the Appellate Division, Second Department, held that "as a result of the 2019 amendment, the NYSHRL now aligns with the standards of the New York City Human Rights Law," and accordingly applied the NYCHRL's mixed-motive framework in analyzing the defendant's motion for summary judgment.[FN3]

In the absence of controlling precedent from the Appellate Division, First Department (see infra fn 3), this court is guided by Wright v White Plains Hosp. Med. Ctr. (237 AD3d 1143, 1145—46 [2d Dept 2025]), as well as the statutory text dispensing of previous federal standards- and therefore the relevant standard for analyzing whether a plaintiff has stated a cause of action for employment discrimination under Section 296[1][a] of the NYSHRL is the same standard that is applicable to claims brought under the NYCHRL § 8-107- the differential treatment standard (Mumin v City of New York, 760 F Supp 3d 28, 55 [SD NY 2024] ["To state a claim for gender discrimination under the NYCHRL and NYSHRL, a plaintiff need only show differential treatment — that she is treated less well — because of a discriminatory intent]; Baker v City of New York, Fire Dept, 2025 WL 2774181, at *17 [SD NY 2025] ["in order to establish a discrimination claim under the NYCHRL or NYSHRL, a plaintiff need only show [. . .] that [ ]he has been treated less well than other employees because of h[is]" race]).[FN4]

With the applicable standard in mind, the court now turns to Plaintiff's amended complaint. Affording the amended complaint the most liberal construction and construing every possible inference in favor thereof, Plaintiff's amended complaint, even under the more liberal pleading standard, nevertheless fails to state a cause of action for employment discrimination under the NYSHRL and the NYCHRL. To plead a cause of action for employment [*6]discrimination, Plaintiff must allege facts that demonstrate: (1) he is a member of a protected class, (2) he was qualified to hold the position, (3) he was treated differently, and (4) the differential treatment occurred under circumstances giving rise to an inference of discrimination (Wright, 237 AD3d at 1145—46; Herrington, 118 AD3d at 544; Askin, 110 AD3d at 622).
In this instance, Plaintiff has satisfied the first three elements. Plaintiff alleges that he is a "white male citizen of the United States, of United States national origin," and that he "called out once and was never late [or] took a long lunch" (Amended complaint ¶¶ 2, 28).[FN5]
Further, Plaintiff alleges that he was not hired after his temporary POP placement ended (id. ¶¶ 26, 41), or after he interviewed with the Bronx District Attorney (id. ¶ 43), and that he was denied a leaf blower (id. ¶¶ 30, 31, 33, 36), was singled out for not working (15-21), and his supervisor made a comment that in the 1980s "white boys would chase him and his friends" (id. ¶¶ 8-12).
Where Plaintiff's amended complaint ultimately falls short is in its complete failure to allege any facts demonstrating that the complained-of conduct occurred because of Plaintiff's race, gender, or national origin. It bears repeating that the linchpin of any discrimination claim—whether arising in the context of employment, housing, or a place of public accommodation—is a showing that the challenged action was motivated by discriminatory animus (Lewkowicz v Terence Cardinal Cook Health Ctr., 212 AD3d 443, 444, leave to appeal denied, 39 NY3d 914 [1st Dept 2023] [plaintiff failed to state cause of action for discrimination because "he did not set forth any factual allegations showing that he was terminated under circumstances that gave rise to an inference of discrimination"]; Pappas v Moody's Inv. Serv., 202 AD3d 630, 630 [1st Dept 2022] [plaintiff's complaint "contain[ed] no allegations of comments or references to his gender to support an inference of discriminatory animus"]; Massaro v Dep't of Educ. of City of New York, 121 AD3d 569, 570 [1st Dept 2014] ["Plaintiff failed to adequately plead discriminatory animus, which is fatal to both her age discrimination and hostile work environment claims under the State and City Human Rights Laws"]).
There is simply nothing in Plaintiff's amended complaint that alleges that he was not hired, or singled out, or denied a leaf blower position because of his race, gender, or national origin (Brown v City of New York, 188 AD3d 518, 518 [1st Dept 2020] [plaintiff's complaint failed to state cause of action for employment discrimination "because it does not contain any factual allegations showing that plaintiff's employment was terminated under circumstances giving rise to an inference of discrimination"]; see also Mitura v Finco Servs., Inc., 712 F Supp 3d 442, 453—54 [SD NY 2024], reconsideration denied, 2024 WL 1160643 [SD NY 2024] [*7]["Because the NYCHRL is not a general civility code, [p]laintiff must allege facts from which the Court can plausibly infer that the unwanted conduct was caused by discriminatory animus"]).
Although Plaintiff's amended complaint is replete with allegations concerning the perceived race, gender, and national origin of various Parks Department employees, the mere identification of a decision maker's or colleague's perceived race, gender, or national origin, standing alone, is insufficient to establish discriminatory animus (see Amended complaint generally ["Keith was the supervisor, he's black," "I think Keith and Krik are of Afro-Caribbean descent," "it was me a black woman [. . .] and another black woman with an accent from the islands," "My career counselor was a black woman [. . .] based on her accent, I can confidently say she is from the Caribbean"]). First, as a practical matter, the workplace is an amalgamation of individuals who fall both within and outside a plaintiff's protected class—whether defined by race, gender, age, sexual orientation, religion, or otherwise. Accordingly, the mere fact that an individual is outside a plaintiff's protected class is neither equivalent to, nor a proxy for, discriminatory animus.[FN6]
This is not to suggest that the identification of an individual's protected trait or traits is irrelevant to pleading a cause of action for discrimination; rather, such identification, standing alone, is insufficient (Etienne v MTA New York City Transit Auth., 223 AD3d 612, 612—13 [1st Dept 2024]). Nor are Plaintiff's legal conclusions that "they don't want to develop white American men" (Amended complaint ¶ 31), that the Parks Department "hates white men" (Amended Complaint ¶ 41), and that the Parks Department does not hire white men because "I only ever saw one other white North American man [. . .] at least I think he would say he's North American" (id. ¶ 32) (see Campbell v New York City Dep't of Educ., 200 AD3d 488 [1st Dept 2021] [plaintiff's "sole allegation that she was paid less than younger employees is conclusory and insufficient"]; see also Etienne, 223 AD3d at 612—13 ["Plaintiff failed to demonstrate that she and her colleague were similarly situated in all material respects because there were no allegations that she had the same job title as plaintiff, had the same responsibilities or job requirements as plaintiff, reported to the same supervisors, or that she was even employed in the same unit as plaintiff"]).
Even the one lone allegation that Plaintiff's supervisor used the term "white boys" without more does not demonstrate discriminatory animus. To understand the reasons why this statement fails to rise to the level of discriminatory animus, it is important to provide the context under which this statement was allegedly made (Cadet-Legros v New York Univ. Hosp. Ctr., 135 AD3d 196, 204—05 [1st Dept 2015] ["Meaning is context-dependent"]). Specifically, Plaintiff alleges that he "was making conversation [. . .] and started talking about how in the 80's in New York City if you didn't live on a block, if you went down that block people might beat you up [the people that live on the block"] (Amended complaint ¶ 9). Plaintiff alleges that in reply, his supervisor Kirk "said something to the effect of 'yes, that did happen, and that white boys would chase him and his friends'" (id. ¶ 10). In this particular context, the explicit reference to race and gender does not convey any viewpoint about white men; rather, it reflects a recollection from Kirk's childhood (Mitura, 712 F Supp 3d at 453—54 ["A discriminatory motive can be shown [*8]either by pleading direct evidence of discrimination, including comments indicating prejudice on account of a protected characteristic" [. . .] Direct evidence of a discriminatory motive includes comments referring to employees by demeaning stereotypes that 'make clear that the employee in question is not truly welcome in the workplace'"). The court acknowledges that there is a fine line between racially motivated comments and comments that refer to a person's race, and this conversation presents a perfect example of the difficulty in ascertaining the distinction (Cadet-Legros v New York Univ. Hosp. Ctr., 135 AD3d 196, 204 [1st Dept 2015]["It is true that discrimination seldom announces itself openly"]).
However, although the task may be difficult, drawing such a line is not impossible, and it is clearly established: a racially motivated comment is one that is imbued with, indicates, or otherwise signals a particular view about a group (Biggan v City of New York, 192 AD3d 498, 499 [1st Dept 2021] [plaintiff's allegation that defendants gave her a t-shirt with the words "I'm dope" did not demonstrate an inference of discrimination because the conduct failed to signal views about the role of disabled people in the workplace]). Critically, it is not the mere reference to race or gender that is dispositive, but whether such a reference communicates a particular viewpoint about certain groups (Biggan, 192 AD3d 498 at 499 ["To be sure, a single comment or incident may be actionable under the City Human Rights Law (HRL) if made in circumstances where such comment or incident would signal views about the role of disabled people in the workplace"]). In this context, Plaintiff's allegations about the purported reference to "white boys" does not cross communicate any view about white men as a group generally or in the workplace.[FN7]
Moreover, the statement amounts to a "stray remark" that "do[es] not, without more, constitute evidence of discrimination" (Pitter-Green v NYU Langone Med. Ctr., 223 AD3d 576, 578—79 [1st Dept 2024] ["plaintiff has not shown how the alleged offensive remark or purportedly discriminatory conduct indicative of a hostile work environment amount to more than petty slights or trivial inconveniences that would demonstrate she was treated less well than other employees because of her protected characteristics"]; Sedhom v SUNY Downstate Med. Ctr., 201 AD3d 536, 537 [1st Dept 2022]; Abe v New York Univ., 169 AD3d 445, 447 [1st Dept 2019] [a few vague and stray remarks, which do not, without more, constitute evidence of discrimination]). Finally, while the court is required to construe every favorable inference on the nonmoving party on a motion to dismiss, it is not going to make up facts where there are none (IntegrateNYC, Inc. v State, No. 75, — NE3d &mdash, 2025 Slip Op 05870, at *2 [2025] ["While th[e] pleading standard is a liberal one, [a] pleading is not an empty formality [. . .] and conclusory factual allegations do not provide the support necessary to survive a motion to dismiss"]).
The court is likewise persuaded by the City's argument that Plaintiff was hired for an initial POP placement and subsequently rehired for a second such placement. Accordingly, any allegation that Plaintiff's career counselor or the Parks Department declined to extend him for a [*9]third POP placement—or to hire him for another position—because he is a white man is substantially undermined by the fact of his initial and subsequent rehiring.
In sum, because Plaintiff has failed to allege any facts demonstrating discriminatory animus, he has not stated a cause of action for employment discrimination, including under the specific theory of a hostile work environment (Massaro, 121 AD3d at 570). To the extent that Plaintiff pleads a cause of action for "private harm suffered from public corruption/refusal to hire in furtherance of public corruption" there is no such cause of action in New York, nor has Plaintiff alleged facts that demonstrate that he was not hired as part of some public corruption. Finally, to the extent Plaintiff's cause of action can be construed as a discriminatory failure to hire, Plaintiff fails to state such cause of action as discussed infra (see also Ingle v Glamore Motor Sales, Inc., 73 NY2d 183, 188 [1989] ["In holding that there is no cause of action in tort for abusive or wrongful discharge of an at-will employee, we declined to allow the use of substitute nomenclature or causes, such as a prima facie tort or intentional infliction of emotional distress, to bootstrap the threshold deficiency in a wrongful discharge claim"]; see also Thawley v Turtell, 289 AD2d 169, 169 [1st Dept 2001] ["plaintiff cannot bootstrap the threshold deficiency in a wrongful discharge claim to his instant claim for tortious interference with an employment relationship"]).
Accordingly it is,
ORDERED that the City of New York's motion to dismiss the complaint (Motion Seq. 002) is denied as moot; and it is further
ORDERED that the City of New York's motion to dismiss the amended complaint (Motion Seq. 003) is granted; and it is further
ORDERED that counsel for the moving party shall serve a copy of this order with notice of entry upon the Clerk of the Court and the Clerk of the General Clerk's Office; and it is further
ORDERED that, once served, the Clerk of the Court shall enter judgment dismissing all claims as against the City of New York.
This constitutes the decision and order of the court.
DATE 1/12/2026
HASA A. KINGO, J.S.C.

Footnotes

Footnote 1:Except where otherwise noted, the facts included here are recited as alleged in the amended complaint and are accepted as true for the purpose of this motion, as required on a motion to dismiss.

Footnote 2:To the extent that Plaintiff had the option to serve an amended pleading or opposition but not both, the City has not raised such argument and accepts service of the amended pleading. Additionally, to the extent that Plaintiff's opposition refers to "Elvises" and "non-Elvises," the court notes that musicians are not a protected category under either the NYSHRL or the NYCHRL and the court will interpret this language to mean Plaintiff's race, sex, and national origin as pleaded in the amened complaint (Shibley memorandum of law at 4-10).

Footnote 3:With respect to the Appellate Division, First Department, there have been three recent cases that acknowledge the applicability of Executive Law § 300, but do not address the specific issue of whether post-amendment claims are subject to the adverse action or differential treatment standard of review. The absence of controlling precedent on this point is in part because these cases analyze different sections of the statute and not Section 296[1][a] which governs unlawful employment discrimination. In Martino v Chenel Cap., LLC (235 AD3d 498, 499 [1st Dept 2025]), the court held that plaintiff's testimony, which was elicited during an inquest on liability and damages "was sufficient to support a viable claim that plaintiff was 'subjected to inferior terms, conditions, or privileges of employment on the basis of her gender' in violation of the State HRL [. . .] and was treated less well than other employees on the basis of gender in violation of the City HRL" (Martino, LLC, 235 AD3d at 499). At first blush it appears that the application of the language "inferior terms, conditions, or privileges of employment" as compared to being "treated less well" signals that the NYSHRL is not the same as the NYCHRL, but somewhere in between the NYCHRL and Title VII. Upon further review however, the "subjected to inferior terms, conditions, or privileges of employment on the basis of her gender" language comes directly from the statutory text under Section 296[1][h] — which is the NYSHRL's harassment provision (id.). The NYCHRL does not have an independent sexual harassment provision but instead, treats sexual harassment as a form of gender-based employment discrimination under § 8-107 governed by the differential treatment standard. In Aponte v Town of Islip (236 AD3d 424, 425 [1st Dept 2025]), the court held that plaintiff failed to state cause of action under the NYSHRL for an associational disability claim because there is no association provision under the NYSHRL. Thus, "even though the State HRL must be liberally construed in a manner similar to the City HRL [. . .] it still must be interpreted based on its plain meaning" (Aponte, 236 AD3d at 425). Finally, in Cornelius v Moody's Invs. Serv., Inc. (233 AD3d 578, 579 [1st Dept 2024]), the court held that plaintiff failed to state a cause of action for employer liability because the 2019 amendments "did not alter the rule that an employer may not be liable for a nonsupervisory employee's discriminatory conduct under the NYSHRL unless it encouraged, condoned, or approved it" (Cornelius, 233 AD3d at 579). Accordingly, these cases when taken together demonstrate that while the NYSHRL will be construed in the same liberal manner as the NYCHRL there are still veritable differences amongst the statutory text that must be given their plain meaning (Aponte, 236 AD3d at 425). As such, even when liberally applied, the 2019 amendments do not create an associational disability claim or alter the rules of employer liability and they do not abrogate the NYSHRL's harassment provision under Section 296[1][h] into its employment discrimination section under Section 296[1][a].

Footnote 4:The court notes that adverse employment action is very much still a route to plead and prove employment discrimination, as such action can demonstrate differential treatment. The practical effect of the amendments is that adverse employment action is not the only way to plead and prove a claim for employment discrimination.

Footnote 5:Plaintiff's amended complaint makes much of his undergraduate degree and paralegal certificate program, which is no doubt commendable, but having a degree in and of itself does not demonstrate that he was qualified for the position or that he was not selected because of his race, gender, or national origin (see Ruderman v New York State Ins. Fund, 215 AD3d 505, 505—06 [1st Dept 2023], leave to appeal denied, 41 NY3d 902 [1st Dept 2024] ["Plaintiff's contention that his undergraduate degree and years of experience automatically make him more qualified than the selected candidates is unavailing"]; see also Crump v City of New York, 2024 NY Slip Op 34255[U] at *8 [Sup Ct, NY County 2024] ["[p]laintiff's subjective belief that he was more qualified than his white counterparts for a promotion does not raise an inference of discrimination"]). This is particularly the case where Plaintiff has not alleged that a degree is even a requirement of the jobs he applied for.

Footnote 6:It should also be noted that individuals within the same protected class can harbor discriminatory animus. Thus, pleading only that a person is inside or outside of a plaintiff's class does not demonstrate the requisite discriminatory intent to state a cause of action for employment discrimination.

Footnote 7:Moreover, to the extent that the listener, Plaintiff, felt that the impact of the reference to "white boys" was discriminatory, to state a cause of action for hostile work environment, the conduct must be objectively and subjectively discriminatory and it must be more than a petty slight or trivial inconvenience (Mitura, 712 F Supp 3d at 453—54 ["comments that a reasonable person would view as only petty slights and trivial inconveniences do not give rise to an inference of discriminatory motive"]).